Next case is Michael Lutz v. United States Postal Service, 06-3154. Mr. June. Yes, Your Honor. Robert June on behalf of Michael Lutz. Your Honors, this issue, this case has to do with a contract, a fundamental contract issue if you ask me. We're dealing with a settlement agreement between Mr. Lutz and the Postal Service. The central issue in the settlement agreement was a promise to apply for disability retirement by Mr. Lutz, and a promise by the Postal Service to take all necessary steps to cooperate and facilitate that application and to refrain from placing any negative statements in the supervisor's statement. What the Postal Service did was they loaded the supervisor's statement with negative statements, which undermined Mr. Lutz's application. But the board said even swimming in the agency was material because there was no evidence presented of disability, no medical evidence. What's your answer to that? Yes, sir. First of all, there's two parts to that that we need to address here. I think there's an issue with just general materiality and underlying issue with what's medical evidence in this context. First of all, the materiality analysis gets a little bit convoluted in the sense that it mixes up an analysis of breach and harm. Every contract requires a duty of breach and harm. And what there's really, this is really more of a harmless follow kind of an argument rather than a no breach argument. I don't think there's much doubt that the central terms of the breach. In other words, the central findings are lost anyway. That's the argument, I believe. Now, I don't agree with that at all. The evidence that was submitted by Mr. Lutz, the medical evidence, and we get into the issue of what's happened in medical evidence. And, of course, the evidence submitted was the analysis of a doctor who reviewed a great deal of his medical findings, somebody who had treated him for a long time. That's Dr. Krauss? Yes. That's what Lisa. Dr. Krauss said. Let's call her. Oh, I'm sorry. Did I say Shaquille? Oh, I'm sorry. Dr. Krauss. We're talking about the same person. Right. But Dr. Krauss is, you know, definitely, Dr. Lisa Krauss is the one who reviewed all this and came to the opinion that he was disabled. Now, in doing so, she said, I haven't seen all of his medical records. Well, they date back to Vietnam when he was shot and had shrapnel in the head in the field. And so, no, she hasn't seen all of that. She hasn't seen everything. But there's nothing in that report that suggests that she lacks enough information to come to a confident conclusion. There's a whole inch and a half of recitation of what she reported, and you're saying that's sufficient? I'm saying that that's a confident analysis of his situation. I don't know how many different, it seems like they're asking for duplication or the underlying data. And, of course, when we really deal with this in court, the underlying data isn't really the evidence. It's not evidence until it's interpreted by an expert, prepared for an opinion that makes it in court. I believe Dr. Krause's opinion, based on the data she's relying on, which includes MRI evidence and other objective evidence, would survive any adult test in any court. On the contrary, what they submit is a supervisor statement, a non-doctor, saying that he heard that there was a fitness for duty review and that Mr. Lutz was found fit for duty. That's a medical opinion with no basis. It's not a doctor issue. Your best argument is that the statements made in the breach to contract poison the determination of the disability retirement process? Yes. Yes, I believe that's absolutely correct. You know, I don't see how this case seems to be squared within the parameters of the Conant v. Office of Personal Management case that I cited in the brief. I can't distinguish them. They seem almost exactly alike, factually. Basically, in Conant, it's exactly the same thing. Both the agency, the IRS in that case, promises to use its best efforts to assist in this application for disability retirement. They load the file with medical stuff. That's a breach. The result is you get to go back and do your disability retirement application over again without the breach. But that was an appeal, and correct me if I'm wrong, that was an appeal, I think, Mr. June, was it not from a disability determination or an adverse disability determination? Yes. Now, what we have here is an appeal from a denial of your enforcement or your breach claim. Yes. Now, what typically, in the case you said, when there is a breach of settlement, the employee or petitioner has the right to go back and challenge the removal action. Now, I gathered from your brief that in this case, you were sort of asking for a clean disability review, if you will. In other words, a disability review by OPM without the statements that were before the first time. Is that correct? Yes, actually. And here's my thinking in looking at that. When Mr. Lutz applied, I handle this at the Apollo level, I know, and not below. When Mr. Lutz made his notice of breach, he indicated that he was entitled to either rescission or enforcement of the settlement agreement and asked for relief. Through this, the administrative law judge recommended rescission, and that's why we're tied into that rescission thing, I believe. Whenever we look at a contract, in what to do in remedy, I believe it's pretty fundamental that enforcement of the contract would be preferable, if it makes the parties whole, that's preferable to the equitable remedy of rescission. So you would favor, if the panel saw the case your way, namely that there was a material breach, you would favor going back and giving Mr. Lutz the opportunity to apply again with a clean recommendation from the agency? Yes. And without impairing the OPM's ability to say, not enough evidence to deal with it cleanly. Just do it over again. Yeah. Basically. Without the personnel comments. Pardon? Without the personnel comments. Correct. Without the adverse supervisor statements and any negative statements along those lines. That's exactly what I think should happen in this. I can't see how it's different from Conan at all in any of those respects. The other issue that kind of gets raised here is whether or not the negative statements that are contained in the supervisor's statement are false statements. And I think that's kind of a red herring. You know, good faith is part of every contract. You don't have to have a contract that says one party won't submit false statements because you're not supposed to be doing that. Well, here they say in addition to the underlying assumed no false statement kind of promise, they say no negative statements. And it's not no negative false statements, no negative statements. So I don't think that's much of an issue right there. In any event, I think what we've got here is pretty basic. It's a breach. The terms of the settlement agreement that are breached are the central terms of the agreement. It clearly caused harm cited by OPM as part of its analysis. And consequently, we should be entitled to the remedy. The real question is, I think, the right remedy. And I believe the right remedy is to enforce the contract before we're submitted. I have reserved three minutes of time for rebuttal, but I don't think I need to argue that. Well, it's the same time for you. Mr. Carroll. Weren't the comments negative? They were negative. They certainly were not positive. They weren't neutral either. There were answers to the questions that were asked, and they could have been phrased more positively. He had to say that the man was off of work. That's required because OPM asked him that, and it required further analysis. So he said, would not. He did. He couldn't very well say he was off of work because he was disabled. Remember, there's a presumption that arises when we put a man off of work that he is disabled. There can be a presumption. He didn't have to say supposedly. I don't know if allegedly would have been better. I think he was required to voice some disagreement with the petitioner's statement, or it was at least not concurrence in the petitioner's statement that he couldn't do his job because he was injured. I don't think he had to say supposedly. I don't know if allegedly would have been better. With seven years of university education, I was thinking about how I would frame this. However, he also put in most of the negative aspects of his statements were related to being fit for duty. He refused to work in his position as a mailman. Right in documentation, a doctor was sent to fitness for duty and found fit for duty, refused to work, period. He, however, refused to work and was in an accident. It changed. Everything was there. Well, that kind of information would have been available anyway to the MSPD. Everything else was a substitute. The personnel supervisor's statement after the agency had agreed not to place negative statements in the supervisor's statement. What does that mean? Your Honor, as I said, they were negative. And I was going to start by saying that for purposes of this appeal, I want to make it clear. For this appeal, I'm going to assume that if the board had reached the question of bypass, whether it would breach, they would have decided that question against us. We know that's what the board said. The board said even if. Yes, the board might pass. Why don't we get to Dr. Krause's report? Dr. Krause, in my opinion, I'm sorry, Your Honor, I'm thrown for a moment. The board made a finding of fact. And the question before this court is whether that finding has substantial evidence. And I think there are three, and Dr. Krause's report figures into this, I think there are at least three reasons why that finding had substantial evidence behind it. And the finding is, of course, when you cut through it all, there wouldn't have made any difference once you said he didn't prove his case. The first reason was to have a look at A24 through A25. And in particular, the first paragraph on A24 that begins, your supervisor documents efficiency, et cetera. And the board, and I'm talking here about OPM now. OPM refers to what we would read as a negative letter. That was required for it to document service efficiency. Right. But it refers to this negative letter. But then it says, the medical evidence submitted also. So suggesting that they're looking at both the supervisor's letter and the medical evidence. And then on page 25, they say, in summary, the evidence submitted. So, I don't know. That's obviously a tenable reading of the kind the board was required to consider. The second paragraph of that letter, the review of all the medical documentation submitted in support of your claim, and then goes on to explain what it was. And it does not include the supervisor's letter. Remember, the supervisor's letter is ambiguous. To find out if it's a service efficiency, they had to consider the supervisor's letter. The lack of ambiguity. You're making the best argument you can, to your credit. I don't know if it's ambiguous. You read that letter, and Mr. Lutz comes across as a malcontent, or someone who wants to dodge work by feigning disability. He does. But the question arises as to whether or not that was medical evidence that the board, that the OPM considered. But isn't the question, though, whether it was a factor in OPM's determination? And it's hard for me, notwithstanding the good arguments you're making, it's hard for me, Mr. Carroll, to look at that OPM letter and conclude that it was not part of the mix. And that's where I think you have a problem. You're making the best argument you can, but to me, that's where you have a problem. I have a factual problem. We overcame it before the court. Not before the A.J., though. Not before the A.J., but this court is reviewing the decision of the board. Actually, the A.J. really didn't consider, the A.J. didn't consider the point the board ruled on. The point the board ruled on is it would have made a bit of difference what we said. I'm paraphrasing badly, but I've got it. It wouldn't make any difference what we said. He lacked medical evidence. And the three factors, I think. Yeah, but A.J. 29, the A.J. says this breach, referring to the fact that negative evidence was submitted, the A.J. says this breach can reasonably seem to discourage OPM's acceptance of the accountant's disability retirement application and therefore fails to facilitate the acceptance. It can indeed, but the board didn't see it that way. The question was whether this court wants to hold that the board erred on that factual finding. The board itself held what the supervisor said didn't make any difference to the outcome. I think there are three, at least three, four indices, actually, four pieces of evidence that support that finding. One is the board's statement at the end. When we reviewed the medical evidence at the end of its letter, we didn't find it. But the problem is, especially what you're saying, the problem is the board isn't OPM. And the best evidence seems to be the OPM letter. And that's a decision this court may want to make. Either the board or this court has to decide what OPM did. Our position would be that the board's finding of fact stands unless the court... Now, Mr. June says what he just wants is a redo on the application with a clean letter. And that would solve the issue, wouldn't it? I mean, if he gets his redo... I don't think so. I thought we did a redo. There was something about it in his brief. And when it came up, I was startled and I'm thumbing through it. I thought we did do a redo. You did submit. Your Honor, we're back into evidentiary material. I don't know. I can only stand... Well, we just have to decide if they still listen for us. That's evident. Now, the second... May I? I'm sorry. No, it just seems to me that... And I can only speak for myself, obviously. But it seems to me you have a breach. You have strong evidence that it factored into OPM. Isn't it maybe... Wouldn't it save everybody a lot of time and trouble just to let him have his redo on the application? And as he says, if he loses, he's done with it. If he prevails, that's it. Otherwise, we have to decide the case in one way or the other. That may be the practical judgment, but I don't know that we can let him have the redo. Remember, the board invited him to submit better medical evidence. The OPM invited him to submit better medical evidence. He had a year to do it. My understanding, and I'm not sure about this, he's been out of... What if you said you had no objection to him doing that at this point? OPM doesn't mind us spending its money on it. I can explore that, but I don't know that we can do that. I think I was pretty clear on that. But, Mr. Carroll, isn't the lawyer already poisoned by the personnel report? How can you do a clean review at that point? OPM is separate. If you override the board's finding that OPM didn't consider the Supervisor's statement to be medical evidence... If you override that, then obviously the court can't... Can we step back and say, just consider the medical evidence? Well, they have to consider some things in the Supervisor, because the Supervisor has to say about what he said, but in slightly different... Arguably, in slightly different terms. He has to say, the guy wouldn't work. He can't say the guy wouldn't work because he was disabled. He'll have to say in some more pleasing terms, the guy wouldn't work and I don't know why. Why couldn't you say he wouldn't work because he was medically incapable of working? Because that says a presumption that he was medically incapable of working, and we, I think it's pretty clear from the Supervisor's letter, we don't think he was. It's none of our business. That's a medical determination. But the letter would have to be about the same, without words like supposedly, Or refused. I'm sorry? Or refused. Oh, refused? He refused carries a kind of a, you know, sort of a negative implication. Let me ask you this. There are three possibilities in this case. You say. One possibility is affirmance, right? One possibility is affirmance, which we would prefer. Another possibility is a situation where there was a reversal, and as a result of that reversal, the court said he gets another chance at the application, or where the court said he gets rescission, right? Well, the court would have to send it back to the board to figure out what happens here. Right. And I'm not sure. Now, so. There's a litigation problem. To see whether he gets a rescission or a reading. A third theoretical possibility is if, at this point, the agency says, okay, you can go and have your application, and then it gets resolved sort of in a settlement vote. Rank, in your view, obviously you would prefer number one, an affirmance. Okay? All right. But what do you prefer as opposed to two and three? Well, I don't know how. To be perfectly honest, Mr. Dewitt and I had some conversations that led me to think about three. And I don't know what we do want you to be perfectly honest. Your Honor, I will do that for the purposes of this appeal only. You're making the best of a tough case here, I think, from your standpoint. But. In other words, what would you prefer, a decision, a negative decision from this court, theoretically, or resolving it with Mr. June? I don't know that we can resolve it with Mr. June. Okay. Because we're not the only agency involved. And I was actually thinking about that during this argument. But I don't know that it's possible. We cannot. We. OPM is a jealous guardian. He let the ear go blind. This would be another issue before the board, mitigation. He let the ear go blind. He didn't apply. And I'm not at all sure that we can do much about that without rehiring him in the face of his. Which, again, would have problems because he says he's disabled. I might want to suggest to the court that I might want to ponder this matter for two or three weeks. Well, I consider the answer to that question. We didn't. But I suspect the two or three weeks wouldn't produce anything. And we in that case would obviously opt for the affirmance. So you're not moving for a suspension of proceedings? I don't know what the consequences of that would be, Your Honor. When would my time to move this, or my, or Mr. June's time to move for such a suspension expire? Could we try out a mediation program? The problems will not be with the Postal Service, Your Honor. The problems will be with another agency. You're saying the problem is that, it's your understanding, Mr. Carr, that OPM at this point could not consider a renewed application? Oh, it certainly wouldn't unless we rehired him. If we rehired him, we'd have to serve a final fit for work. Would a transcript of this proceeding help? It does. You know, Your Honor, we're getting to such a thick, I think I have to stand with my position as it now is. I think we understand your case as you present it. But we do appreciate your candor. It's a difficult case, Mr. Carr. Let me just summarize. We see this as a finding of fact. Finding of fact means, we think the letter that was submitted, it was a reply brief, establishes that the board, that the OPM was perfectly entitled to reject it. This court does not review OPM decisions of that kind. The board probably doesn't. The board was entitled to find that OPM meant what it said, when it said, would it have made any difference if we said the medical evidence is insufficient to support your application? Please send us more information. And that was the last thing. We understand your case, Mr. Carr. Thank you. Mr. June has some time left. Yes, just very briefly, I only have two points to really touch on. One has to do with the potential supervisor's statement. And I think, you know, creative people can come up with a way of making a neutral statement. It's possible to say, for example, that he submitted a doctor's statement and did not come to work. I think you can do that without saying, you know, we agree that he's disabled and without injuring his claim. The other is that, yeah, I think that the problem of going back to OPM, I don't think that that's as big a problem as I see it. This has proceeded up through the appellate process as an enforcement mechanism related to that claim. He didn't resubmit more evidence after initially being told this process was tainted. And what they were asking for was really not going to be that helpful. The underlying data that Dr. Krause had considered, for example, I don't see what they needed there. But in any event, I think that there was medical evidence submitted that was counted to support his disability. And I believe that the right thing to do is to just simply get this back to OPM. I'm willing to work on it if there's an opportunity. It sounds like Mr. Carr is basically saying that there are constraints that we don't fully understand and that there's two alternatives here, one firm or two, reverse and send it back to the board, and then let the parties work out before the board what the appropriate course is and what can or can't be done. That seems to be where he is. That may be the case. I'm not certain that it's not the case. But I believe that it's possible to just simply send this back to OPM from my look at it. And that's what I would recommend. Thank you, sir. Thank you, Mr. Choon. Okay, so we'll take another five minutes.